# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SOUTHERN PHARMACY CONSULTANTS, LLC, ) <br> ) <br> Plaintiff/Counterdefendant, ) <br> ) <br> v. ) <br> ) <br> SMART FILL MANAGEMENT GROUP, INC, ) <br> ) <br> Defendant/Counterplaintiff. ) | NO. 3:13-cv-1100 <br> JUDGE CAMPBELL |

**MEMORANDUM OPINION**

Pending before the Court are Defendant's Motion for Partial Summary Judgment as to Plaintiff's Commissions Statute Claim, Docket No. 95, and Plaintiff's Motion for Partial Summary Judgment on the liability portions of its breach of contract claim, its claim under the Tennessee Commission Statute, Tenn. Code Ann, § 47-50-114, *et seq.*, and Defendant's counterclaims, Docket No. 108. For the reasons stated herein, the Court will grant Defendant's motion and deny Plaintiff's motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Before the parties entered into the contract at issue in this case, Plaintiff's principal, Mr. Hatfield, was the president of a non-profit organization made up of independent pharmacies in Tennessee whose function was to negotiate prices from drug wholesalers as a group to provide leverage in price negotiations with pharmaceutical distributors comparable to that enjoyed by larger pharmacy chains. Defendant is a company that provides a variety of business services to independent pharmacies, including facilitating this type of group purchasing with drug wholesalers. Defendant wanted to expand into Tennessee and approached Mr. Hatfield to discuss the possibility of working

together. At that time, Plaintiff's organization had nineteen member pharmacies. Based on Defendant's proposal, Mr. Hatfield's organization decided to dissolve and have its members become members of Defendant, such that Defendant would take over negotiating with pharmaceutical distributors on their behalf.

Mr. Hatfield and Defendant's executives met sometime between January and March 2011 and reached an oral agreement about the future working relationship between the parties. The terms of that oral agreement are disputed. Docket No. 123 at 8–17 (Defendant's Response to Plaintiff's Statement of Undisputed Material Fact "SUMF"). After the meeting, Mr. Hatfield drafted a written contract called the Group Purchasing Organization Agreement, which he presented to Defendant on April 1, 2011. An executive with Defendant signed the written contract soon thereafter. The entire substance of the written contract is contained on one page, and the parties' signatures are on the second page. Docket No. 109-1 (Written Contract). The written contract left many terms undefined and details unspecified. It provided that Defendant was to pay Plaintiff "an administrative fee of .2% of Brand purchases of product purchased by qualified members in addition to a 1% fee of all generics purchased by qualified members." *Id.* at 1. The written contract did not define the term "qualified members" or "Brand purchases." The written contract also specifies additional amounts Defendant would pay Plaintiff based on purchases made by pharmacies that involved certain discounts and savings. Defendant maintains that the written contract inaccurately stated that Plaintiff would receive the entirety of these savings amounts, while the parties' prior verbal agreement had been that the parties would split these savings.

Defendant agrees that it did not pay Plaintiff in accordance with the written contract, but asserts that the parties verbally agreed to amend the written contract soon after it was signed to

2

clarify that the savings were to be split between the parties. Defendant contends that the verbal modification of the contract also provided Plaintiff with less administrative fees for some types of sales and higher administrative fees for other types of sales, such that if Plaintiff is correct that the written contract governs, Defendant overpaid Plaintiff for some types of sales.

The parties disagree about when, if, and how many times the written agreement was orally modified, but no new written contract was signed. Instead, Defendant presents the Court with the original written contract with a handwritten note on it, which says "split the difference," apparently referring to the savings amounts that Defendant asserts were to be split between the parties pursuant to the verbal agreements before and after the written contract was signed. Docket No. 122-10. The written contract containing this handwritten note has no additional signatures, initials, or dates that might indicate Plaintiff's agreement with this modification. Defendant also argues that Plaintiff indicated its agreement to the verbal modification of the written contract in an e-mail sent from Plaintiff to Defendant in July 2011 which contained a spreadsheet with the fee calculation that was consistent with the verbal modification. Defendant states that it paid Plaintiff in conformity with the verbal modification from June 2011 to April 2014 without any objection from Plaintiff. Defendant argues that Plaintiff first asserted that Defendant was obligated to pay it in accordance with the written agreement, as opposed to the later verbal modification, in the course of this litigation. Plaintiff counters that the July spreadsheet was erroneous and that the written contract governs this relationship. Plaintiff also argues that the alleged verbal agreement to reduce the payments to which it was entitled under the written contract, were not supported by consideration to Plaintiff and so are not legally enforceable.

The parties also dispute what was required of Plaintiff in order to receive the administrative fees. Plaintiff alleges that although it was not contractually obligated to service existing customers, it did so anyway, answering their questions and acting as an intermediary between the members and Defendant. Defendant maintains that the verbal agreements between the parties before and after the written contract was signed required Plaintiff to service existing members. Defendant argues that although Plaintiff did, in fact, service existing members consistent with its agreement to do so, it did so poorly and stopped doing so entirely in September 2013, before the end of the contract term. Defendant states that it stopped paying administrative fees in April 2014 at the end of the 3-year term of the contract, only after Plaintiff had stopped performing its administrative responsibilities.

On October 7, 2013, Plaintiff filed this action against Defendant. Docket No. 1. On December 30, 2014, Plaintiff filed an Amended Complaint raising the following claims: (1) declaratory judgment; (2) breach of contract; (3) violation of the Tennessee unpaid commissions statute; (4) violation of the Tennessee Consumer Protection Act; and (5) intentional misrepresentation. Docket No. 74. In short, Plaintiff alleges that Defendant failed to pay it all the administrative fees due under the contract, which Defendant denies. Docket Nos. 74 at ¶ 15; 82 at ¶ 15. Defendant has asserted counterclaims which include, *inter alia*, breach of contract and unjust enrichment based on Plaintiff's alleged failure to provide maintenance and support to the pharmacies. It alleges that Plaintiff's alleged breach justifies its early termination of the agreement.

On March 27, 2015, the Court granted Defendant's motion for partial summary judgment and entered judgment in Defendant's favor on Plaintiff's Tennessee Consumer Protection Act claim. Docket No. 94. Defendant had filed that motion before the Court granted Plaintiff's motion to amend

its complaint. Defendant now seeks judgment on a Plaintiff's claim under the Tennessee Commissions Statute, which Plaintiff first raised in its Amended Complaint.

Plaintiff Southern Pharmacy Consultants is a Tennessee limited liability company. Defendant Smart Fill Management Group is a Minnesota corporation with its principal office located in Austin, Minnesota. Plaintiff alleges that Defendant conducts substantial business in the State of Tennessee, that the contract between the parties was executed in Davidson County, Tennessee, and that the contract has been substantially performed in the State of Tennessee. Federal court jurisdiction is based on diversity of the parties, pursuant to 28 U.S.C. § 1332.

## II. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating 'an absence of evidence to support the nonmoving party's case.'" *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party is able to meet this initial burden, the non-moving party must then "set forth the specific facts showing that there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)).

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Tolan v. Cotton,* 572 U.S. ----

5

(2014), 134 S.Ct. 1861, 1866 (2014); *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595 (quoting *Anderson*, 477 U.S. at 252). "As to materiality, the substantive law will identify which facts are material. Only disputes over fact that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

**III. Legal Analysis**

    **A. Plaintiff's Breach of Contract Claim and Defendant's Counterclaims**

Plaintiff seeks judgment on its breach of contract claim and on Defendant's counterclaims, which include, *inter alia*, claims for breach of contract and unjust enrichment. There are genuine disputes of material fact related to these claims that must be resolved by a fact finder. For example, Plaintiff claims that Defendant has no legal or factual basis for asserting that Plaintiff breached the contract by failing to provide maintenance and support to the member agencies, but Defendant cites testimony in the record about ways in which Defendant was displeased with the services being rendered to the pharmacies and details about stores that ended their membership because of Plaintiff's lack of adequate maintenance and support. Docket No. 123 at 26–29 (Defendant's Response to Plaintiff's SUMF); 122-5 (Astrup Dep. at 7–10, 17); 122-3 (Cole Depo. at 103–18).

6

Plaintiff also claims that Defendant repudiated the contract in its entirety by refusing to pay Plaintiff in April 2014, a year before the expiration of the contract's term. Although Defendant does not dispute that it stopped making payments in April 2014, it presents evidence that Plaintiff had stopped performing under the contract before that date, such that it was no longer obligated to make payments. *Id.* at 35–37. There is a genuine dispute of material fact as to which party first breached this contract. Plaintiff also alleges Defendant breached the contract by failing to pay fees for certain "specialty" items when the Agreement requires Defendant to pay administrative fees for all "Brand purchases of product." Defendant presents evidence that Mr. Hatfield had discussions with a pharmacy owner complaining that the percentage of these specialty items had increased, from which one could infer that Mr. Hatfield understood that he did not get paid for these specialty items under the contract, but wished the percentage of these items would be lower. Docket No. 122-9 (Logan Depo.). The meaning of the phrase "Brand purchases" in the written contract is unclear, and there is a genuine dispute as to what the parties intended and understood that phrase to mean. Plaintiff also alleges that Defendant breached the contract by not paying it for purchases made by certain pharmacies, but there are genuine disputes of material facts as to this issue as well. Last, Plaintiff argues that the verbal amendment Defendant alleges clarified that the parties would split the savings from certain purchases is unenforceable for lack of consideration. To support this position, Plaintiff stacks inference on top of inference as to the timing and content of alleged oral amendments to the written contract. When analyzing a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under this standard, there are genuine issues of material fact related to this issue and

the other issues related to Plaintiff's breach of contract claim and Defendant's counterclaims. Plaintiff's motion for summary judgment on its breach of contract claim and the Defendant's counterclaims will be denied.

### B.	Tennessee Commission Statute

Tenn. Code Ann. § 47-50-114, *et seq.* (the "Commission Statute") provides that "[a]ll commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within fourteen (14) days after the date of termination." Tenn. Code Ann. § 47-50-114(b)(3). The statute defines a "sales representative" as "a person who contracts with a principal to solicit wholesale orders and who is compensated, in whole or in part, by commission, but does not include one who places orders or purchases for such person's own account for resale." Tenn. Code Ann. § 47-50-114(a)(3). A "principal," is a person who, among other things, "[c]ontracts with a sales representative to solicit orders for the product." Tenn. Code Ann. § 47-50-114(a)(2)(B).

Plaintiff argues that it is a "sales representative" under this statute applies because the pharmacies it recruited for membership with Defendant were required to purchase 95% of their pharmaceuticals from Defendant as a condition of membership. Plaintiff states that although pharmacies are told they are purchasing pharmaceuticals from a company called AmerisourceBergen Drug Corporation ("ABDC"), discovery has revealed that Defendant actually purchases the pharmaceuticals from ABDC and sells them to the member pharmacies for a profit. Plaintiff argues that Defendant should therefore be characterized as a wholesaler of pharmaceuticals for which Plaintiff solicited "wholesale orders" by virtue of recruiting pharmacies to join Defendant. Defendant does not dispute that it sells some pharmaceuticals directly to pharmacies and that member pharmacies can count these sales in the calculation required to show that they have

purchased 95% of their pharmaceuticals from Defendant. Nonetheless, Defendant argues that Plaintiff did not solicit orders from pharmacies as required by the statute.

The Court agrees with Defendant that Plaintiff is not a "sales representative" as defined in the Tennessee Commission Statute. Although Plaintiff recruited pharmacies to become Defendant's members, which entailed a commitment to purchase 95% of its pharmaceuticals from Defendant, Plaintiff did not itself solicit those wholesale orders. Nor is Defendant a "principal" under the statute, because it does not "contract[] with a sales representative to solicit orders for the product." Tenn. Code Ann. § 47-50-114(a)(2)(B). Defendant contracted with Plaintiff to recruit members, not to solicit orders for pharmaceuticals.[1]

The Court also agrees with Defendant that the statute does not apply to intangible items, such as the services Plaintiff provided. *Brock v. Positive Changes Hypnosis, LLC*, 534 F. Supp. 2d 793, 795 (W.D. Tenn. 2008) (holding that "the hypnosis service programs that Plaintiff sold . . . on commission were intangible and therefore not products within the meaning of the Commission Statute); *Bowman v. PHP Companies, Inc.*, 2005 WL 2993902, at *11 (E.D. Tenn. Nov.8, 2005) (concluding that the term "product" as used in the Commission Statute does not include intangible items and holding that the group insurance plans sold by plaintiff were not products within the meaning of the statute). Plaintiff argues that the pharmaceuticals purchased by member pharmacies are tangible items, but again, Plaintiff contracted with Defendant to provide its services of recruiting pharmacies for membership, not to solicit wholesale orders of pharmaceuticals. Plaintiff's connection to the member pharmacies' purchases of pharmaceuticals from Defendant is simply too

---

[1] The statute at issue in the Alabama case, *Lindy Mfg. Co. v. Twentieth Century Mktg., Inc.*, 706 So. 2d 1169 (Ala. 1997), cited by Plaintiff, does not contain the same language as that at issue in the Tennessee statute in this matter and also focused on legal issues not relevant to this case.

9

attenuated to fall within the plain language of the Tennessee Commission Statute. The Court will enter judgment for Defendant on this claim.

IV. **CONCLUSION**

For the foregoing reasons, the Court will deny Plaintiff's motion for partial summary judgment, Docket No. 108, and grant Defendant's motion for partial summary judgment, Docket No. 95. The Court will enter judgment for Defendant on Plaintiff's Tennessee Commission Statute claim.

An appropriate order is filed herewith.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE